IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. |
| | : | |
| v. | : | VIOLATION: |
| | : | |
| | : | 18 U.S.C. § 1001(a)(2) |
| HANNIBAL KOKAYI, | : | (False Statements) |
| Defendant. | : | |
| | : | |

**STATEMENT OF OFFENSE IN SUPPORT
OF DEFENDANT'S PLEA OF GUILTY**

The Government respectfully submits the following Statement of Offense in support of a plea of guilty by defendant Hannibal Kokayi ("KOKAYI") to the one-count Information in the above-captioned matter.

**I.  ELEMENTS OF THE OFFENSE**

To sustain a conviction for a violation of 18 U.S.C. § 1001(a)(2) at trial, the government must prove the defendant (1) knowingly and willfully, (2) made any materially false, fictitious, or fraudulent statement or representation, (3) in a matter within the jurisdiction of the executive or judicial branch of the Government of the United States. A statement is "material" if it has a natural tendency to influence, or is capable of influencing, either a discrete decision or any other function of the agency to which it was addressed. The statement need not actually influence an agency in order to be material. The "knowing and willful" element does not require that an agency or individual actually be deceived, but only that the defendant knew that his statement was false. A criminal investigation conducted by the Federal Bureau of Investigation ("FBI"), during which interviews are conducted, is a matter within the jurisdiction of the Executive Branch.

**II.  SUMMARY OF FACTS**

If this case were to go to trial, the government would prove the following facts beyond a

reasonable doubt:

1. The FBI has been conducting investigations relating to foreign terrorist groups, including the Islamic State of Iraq and al-Sham ("ISIS"), for several years. Since 2004, ISIS and its predecessors have been designated by the U.S. Secretary of State as a Foreign Terrorist Organization (FTO) and as a Specially Designated Global Terrorist ("SDGT") under federal law. On or about May 15, 2014, the Secretary of State amended the designation to add the alias Islamic State of Iraq and the Levant ("ISIL"), The Islamic State of Iraq and al-Sham, the Islamic State of Iraq and Syria, ad-Dawla al-Islamiyya fi al-Iraq wa-sh-Sham, Daesh, and Dawla al Islamiya, and Al-Firquan Establishment for Media Production (collectively referred to herein as "ISIS"). On September 21, 2015, the Secretary added the following aliases to the FTO listing: Islamic State, ISIL, and ISIS. ISIS remains a designated FTO. Abu Bakr al-Baghdadi ("al-Baghdadi") was the leader (or "Caliph") of ISIS, at all times relevant to this statement of offense. To gain supporters, recruit fighters, and raise funds, ISIS spreads its message of violent jihad using social media platforms, such as Twitter, Facebook, Telegram, YouTube, Instagram, and Paltalk. On these platforms, ISIS posts audio and video files that include recruitment messages and updates of events in Syria and Iraq. Online chat rooms controlled by ISIS advocates further effectuate this support.

2. Since on or about September 22, 2014, ISIS has advocated for the death of Americans and Europeans, including civilians, by any means necessary, including beheading, and its leadership gave blanket approval for indiscriminate killing by people residing in these countries. Sunni extremists and others, who are not citizens or residents of Syria and Iraq, have traveled to Syria and Iraq to join ISIS, an act commonly referred to as "hijrah."[1] At all relevant times, the

---

[1] "Hijrah" or "hijra" means migration, but was specifically used by Kokayi and P-1 to mean the travel to engage in jihad.

FBI and a federal Grand Jury for the District of Columbia were conducting an international terrorism investigation to determine if a group of individuals in Washington, DC and elsewhere were committing federal offenses relating to terrorism (e.g., attempting to provide material support to ISIS, including by attempting to travel to ISIS territory to fight on behalf of ISIS or planning to commit terrorist acts in the United States on behalf of ISIS). The FBI and the federal grand jury were investigating potential violations of 18 U.S.C. § 2339B: that is Providing, Attempting to Provide, and Conspiring to Provide Material Support to a Foreign Terrorist Organization (ISIS).

3. Person 1 ("P-1"), who is not a U.S. person, resided in Jamaica at all times relevant to this statement of offense. P-1 was convicted in British court for soliciting murder related to his encouragement of Muslims to fight and kill "kuffars" (non-believers): Americans, Jews, Christians, Hindus, and other non-Muslims. After his conviction, imprisonment, and release, P-1 continued to encourage violence and terrorist acts in speeches posted on the Internet, specifically on a platform called Authentic Tauheed ("AT"). P-1 has also recorded numerous statements, posted on AT, inciting violence and supporting ISIS, its former leader al-Baghdadi, al-Qaeda, and Usama bin Laden. AT contained recorded lectures of P-1 proselytizing on behalf of and in support of ISIS. These statements also encouraged Muslims to travel to ISIS territory to live ("hijrah") and militarily support ISIS against its enemies ("jihad"). On April 18, 2017, a grand jury in the State of New York, County of New York, charged P-1 with Conspiracy in the Fourth Degree as a Crime of Terrorism, Soliciting or Providing Support for an Act of Terrorism in the First Degree as a Crime of Terrorism, Soliciting or Providing Support for an Act of Terrorism in the First Degree, Attempted Soliciting or Providing Support for an Act of Terrorism in the First Degree as a Crime of Terrorism, and Attempted Soliciting or Providing Support for an Act of Terrorism in the First Degree as a Crime of Terrorism. On or about August 25, 2017, P-1 was arrested in Jamaica

pursuant to an extradition request from the United States on the basis of this New York state indictment. On or about December 5, 2017, the United States Office of Foreign Assets Control ("OFAC") designated P-1 as an SDGT for assisting in, sponsoring, or providing financial, material, or technological support for, or financial or other services to or in support of, ISIS. In or about August 2014, P-1 was religiously married to P-2, who was a resident of the District of Columbia.

4. KOKAYI is P-2's natural son. P-2 has an older son, P-4 (KOKAYI's older brother), and a step son P-7 (a child of P-2's ex-husband and former wife). Throughout this period, P-4 was married to P-6. P-9 was friends with KOKAYI, and he was closely associated with P-2 and P-2's family from the Summer of 2014 until the Spring of 2016. Between on or about January 2012 and April 2017, P-9 was religiously married to P-3. Between the Summer of 2014 and the Spring of 2017, KOKAYI, P-2, P-4 and P-6 were close friends with each other and P-3, P-7 and P-9. KOKAYI, P-2, P-3, P-4, P-6, P-7, and P-9 were also friends with P-8. After P-2 moved to Jamaica to live with P-1 in August 2014, KOKAYI, P-9, and P-3 lived together in P-2's home in the District of Columbia. P-4, P-6 and P-8 lived in the Washington, D.C. area, and would regularly visit KOKAYI, P-9 and P-3 at P-2's home in the District of Columbia. P-7 resided in New York, but also visited P-2's home.

5. Between on or about August 2014 and at least April 2017, KOKAYI, P-3, P-4, P-6, P-8, and P-9 (collectively, the "GROUP") met regularly at P-2's home and elsewhere to discuss ISIS. The GROUP avoided discussing ISIS with persons who they knew were not supportive of ISIS. When the GROUP gathered together they would regularly consume ISIS propaganda videos and information, listen to P-1's lectures including lectures supporting ISIS, hijrah to ISIS territory, and jihad,[2] and discuss the righteousness of violent and terrorist acts performed by ISIS and its

---

[2] "Jihad" means fight or struggle, but was specifically used by Kokayi and members of the GROUP

4

followers (including executions by beheading and immolation, slavery, and lone wolf attacks against civilians in the West), hijrah to the Islamic State, and the benefits of becoming a shaheed, or martyr for their faith. From at least June 2014 until August 2017, P-2 helped P-1 with these lectures by designing and disseminating the lecture posters, typing lecture notes and uploading lectures and lecture notes to P-1's website. During this period, some members of the GROUP, including KOKAYI, P-3, P-4, P-8, and P-9 (collectively the "Hijrah Group"), discussed and agreed that ISIS was a legitimate caliphate, and that its leader, al-Baghdadi, was a Caliph to whom they owed their religious obedience. Separate from the Hijrah Group, Kokayi knew P-2 agreed that ISIS was a legitimate caliphate and that al-Baghdadi was a legitimate Caliph. The members of the Hijrah Group further stated and agreed on numerous occasions that they would each perform hijrah to ISIS territory in order to fight jihad on behalf of ISIS, and that they would take steps to prepare for hijrah while they were in the United States. The Hijrah Group regularly obtained and distributed propaganda material from ISIS they found on the internet and Twitter, including information on how to perform hijrah safely and get through borders into ISIS territory. The Hijrah Group agreed that they needed to prepare for hijrah, take security precautions to avoid being caught by law enforcement, and save money in order to make the journey. As part of their preparation to fight jihad in ISIS territory, members of the Hijrah Group regularly went paintballing and to gun ranges in the Washington, D.C. area to shoot various weapons. Members of the Hijrah Group were concerned that they might get caught if they traveled to ISIS territory as a group, and therefore encouraged each member to perform hijrah as soon as they could. At the time, and presently, KOKAYI knew that in 2014 P-2, P-6 and P-7 were aware of the Hijrah Group's intention and desire to perform hijrah to ISIS territory to commit jihad on behalf of ISIS.

---

to mean violent warfare and fighting on behalf of ISIS against its enemies.

6. Between August 2014 and March 2017, members of the Hijrah Group saved money and purchased goods that could be used to perform hijrah. In or about March 2017, P-9 and P-3 had a child in common, and P-9 grew estranged from P-3 and other members of the Hijrah Group. After on or about April 2017, P-9 did not have regular contact with the GROUP.

7. In or about August 2018, P-4 was arrested and has been incarcerated since that time.[3] In 2018, prior to P-4's arrest, Kokayi and P-4 had a discussion in which P-4 still indicated he planned to make hijrah to ISIS territory and fight jihad on behalf of ISIS.

8. On or about July 24, 2018, KOKAYI was voluntarily interviewed by FBI Special Agents ("FBI Agents") at Dulles International Airport, in Virginia. During the interview, KOKAYI was warned that intentionally lying to the FBI was punishable under federal law. During the interview, FBI Agents asked KOKAYI about his association with foreign terrorist organizations, and specifically identified ISIS as a foreign terrorist organization. KOKAYI made false statements to the FBI Agents, including that:

   a. He had never expressed a desire to participate in an extremist organization such as ISIS;

   b. He did not know of anyone who had participated with or been a member of an extremist organization such as ISIS;

   c. He had never encouraged anyone to participate in ISIS's activities;

---

[3] On August 23, 2018, P-4 was arrested based upon a criminal complaint issued on August 22, 2018 by the U.S. District Court for the Eastern District of Virginia charging P-4 with 1 count of 18 USC 2422(b) for Coercion and enticement of a juvenile to engage in unlawful sexual activity. P-4 was convicted of 2 counts of Coercion and Enticement of a Minor (18 USC 2422(b)) and 1 count of Transfer of Obscene Material to a Minor (18 USC 1470) on April 9, 2019 (for count 1 and 3) and May 8, 2019 (for count 2) and was sentenced to 120 months of imprisonment. P-4 was alleged to have sent the minor extremist material during their relationship. The minor was a student in a religious class that P-4 taught.

    d. He never expressed a desire to support a terrorist organization;

    e. He never expressed a desire to join ISIS;

    f. He did not know of anyone who encouraged others to participate in or support a foreign terrorist organization;

    g. He did not personally know of anyone who had expressed a desire to join or support ISIS;

    h. He never expressed a desire to live in an area controlled by a terrorist organization;

    i. He did not know of anyone who wanted to travel overseas and live in ISIS controlled territory; and

    j. None of his friends in the District of Columbia support or have a desire to join a terrorist organization.

9. On or about August 23, 2018, KOKAYI voluntarily met with FBI Agents, in the District of Columbia after P-4 had been arrested. During the interview, FBI Agents advised KOKAYI that false statements to the FBI were punishable under federal law. During the interview, FBI Agents asked KOKAYI about P-4 and KOKAYI's knowledge about activity related to foreign terrorist organizations, including ISIS. KOKAYI made false statements to the FBI Agents, including that:

    a. The answers he previously gave the FBI Agents on July 24, 2018 remained true and correct;

    b. He did not remember if P-4 had ever expressed a desire to fight jihad;

    c. He did not remember if P-4 had ever expressed a desire to travel overseas to fight jihad;

d. P-4 did not express sympathies for ISIS that would be construed as being supportive of the cause;

e. He did not remember if P-4 stated he wanted to travel to Syria to fight for ISIS;

f. He did not remember if he ever stated he wanted to travel to Syria to support ISIS or fight for ISIS;

g. He never expressed a desire to travel overseas to fight for ISIS, or to fight jihad;

h. He could not remember if anyone he knows or communicated with expressed a desire to him that they wanted to make hijrah to support the Caliphate, support ISIS or to possibly martyr themselves;

i. He never expressed a desire to participate in, or become a member of a foreign terrorist organization like ISIS, and he did not know anyone who had done so;

j. He, never encouraged anyone to become a member or supporter of a foreign terrorist organization, such as ISIS;

k. He never expressed a desire to provide money, anything else of value, or services or labor in support of a foreign terrorist organization such as ISIS;

l. He did not know of anyone else who had provided support to ISIS, or expressed a desire to provide money, anything else of value or services or labor for a foreign terrorist organization such as ISIS;

m. He never expressed a desire to travel abroad and live in an area controlled by a foreign terrorist organization such as ISIS; and

n. Neither he, nor anyone else he knows, encouraged, or provided advice or guidance, to anyone who expressed a desire to go overseas to support ISIS in any way.

10. KOKAYI understood that his false statements in July and August 2018 were material to the ongoing criminal and grand jury investigations, and that his statements related to an FTO and SDGT, that is ISIS, and to persons who desired to travel to ISIS territory to provide material support to ISIS, and to perform violent jihad for ISIS against its enemies.

Respectfully submitted,

CHANNNING D. PHILLIPS
Acting United States Attorney

By: _____
Tejpal Chawla
Assistant U.S. Attorney

Dated: April 15, 2021

## DEFENDANT'S ACCEPTANCE

I have read each of the pages which constitute the Statement of Offense and have discussed it with my attorney, Frank Salvato. I fully understand this proffer and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this agreement fully.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in my plea agreement. I am satisfied with the legal services provided by my attorneys in connection with this proffer and my plea agreement and matters related to it.

Date: 4/15/21

_____
Hannibal Kokayi
Defendant

## ATTORNEYS' ACKNOWLEDGMENT

I have read each of the pages which constitute the Statement of Offense, reviewed them with my client, and discussed the provisions of the proffer with him, fully. These pages accurately and completely set forth the government's proof as I understand it.

Date: 5/3/21

_____
Frank Salvato
Attorney for Defendant