IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA:

V.                                                      Criminal No. 21-00308 (JEB)

HANNIBAL KOKAYI                  :

POSITION ON SENTENCING

I.   Introduction

Mr. Kokayi is a young man with no criminal history. Hannibal turns 30 one day before our sentencing. He enjoys considerable support from the community and has a long and steady work history despite a significant medical issue. There is no dispute that Kokayi gave a series of exculpatory no/denial answers three years ago in 2018 about events that took place as far back as 2014. However, there is also no dispute this case was dormant for over two years after these 2018 interviews. This dormant period—and the recent exemplary performance while on supervision since late 2020-- demonstrates Kokayi was not a threat to anyone or anything in 2018 and is clearly not a threat to anyone or anything today. Contrary to the government's opening salvo in its position paper, Kokayi is certainly not an extremist today. Kokayi has had absolutely no relationship with or support for P-1 for many years.

When contacted by the authorities six months ago, Kokayi did everything in his power to demonstrate his cooperation through a series of proffers. Hannibal was consensually monitored electronically first by the FBI for three months and now by pretrial services for another three months—all without incident. If something is not broken, there is no reason to fix it or change it. That is the case here. Kokayi is extremely compliant with supervision. A period of continued supervision/probation with an additional six months of electronic monitoring is more than sufficient to meet all sentencing objectives under 18 U.S.C. Section 3553. Please consider this memorandum and the attachments in support of our request. The letters from the community are exhibits 1-10. His own statement is exhibit 11 and the redacted medical records are exhibit 12.

II.     The Appropriate Sentence

We have carefully reviewed the presentence report and noted no material corrections or additions. The recommendation filed by the probation officer carefully sets forth the reasons for the officer's position that incarceration is not warranted. The guideline range is 0-6 months.

Since *United States v. Booker,* 543 U.S. 220 (2005), the federal sentencing guidelines are not mandatory but are still a significant factor the Court shall consider in imposing sentence. Imposition of a sentence, or course, is not a

mathematical or hypothetical exercise. Sentencing is an exercise in discretion, humanity, and justice.

After calculating the guidelines, the Court "must make an individualized assessment based upon the facts presented." *Gall v. United States,* 552 U.S. 38, 50 (2007); *United States v. Hughes,* 401 F.3d 540. 546 (4th Cir. 2005).  A district court should consider all the 3553(a) factors to determine whether they support the sentence requested by a party.  *See Gall,* 552 U.S. at 49-50.   The guidelines are properly calculated at a range of 0-6 months.

The Section 3553 factors are 1) the nature and circumstances of the offense, 2) the history and characteristics of the defendant, 3) the kinds of sentences available, 4) the guideline range, 5) the need to avoid unwarranted sentencing disparities, 6) the need for restitution, 7) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant, and provide the defendant with adequate educational and vocational training, medical care and other treatment.  The sentencing court must consider each of these factors in imposing a sentence sufficient, but not greater than necessary to accomplish the goals of sentencing.  *See Kimbrough v. United States,* 552 U.S. 85 (2007).

Imposition of a term of imprisonment is subject to the following limitation: "the court, in determining whether to impose a term of imprisonment, and if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. Section 3582.  In short, in every case, the district court must consider the 3553(a) factors, including the guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing.  Here, all factors support the sentence suggested in this position paper and the recommendation offered by the probation office.

The facts, circumstances and history underlying this case are somewhat unusual.  As noted above, there is no dispute that when confronted by the FBI with a litany of yes/no questions, Mr. Kokayi provided exculpatory no responses/denials to these stock questions. While we certainly recognize the ideas and videos floated by and around Kokayi seven years ago are concerning, the fact is that if he simply answered yes to many of these questions, there would have be no crime at all given his lack of any overt or actual effort to support any group.  Yet, he was scared and denied.  He is now labeled a felon.

 In a likely effort to cement his "no" statement recitations, the FBI again interviewed him a month later.  Both interactions took place in the summer of

2018.  While the "exculpatory no" defense was formally rejected years ago by a Supreme Court moving towards a more "textual" approach to statutes, there can be no meaningful dispute the denials were out of fear and while there is some arguable level of possible "materiality" here, the denials had limited impact on the investigative function.  *See Generally United States v. Brogan*, 118 S.Ct. 805 (1998) (Court discussing the previous circuit split on whether false denials are even punishable under Section 1001 with two dissenters from the majority opinion authored by Justice Scalia).

   While the government makes a substantial effort to paint Kokayi with a broad albeit old brush, a few points of clarification are necessary to accurately present the entire picture.  First, as it must, the government concedes that any of these expressions or comments by Kokayi ended in 2017.  In fact, the first comment noted by the United States (on page 4) involves a **2014** exchange where another individual sent Kokayi a video and Hannibal commented in part that "he used to follow him, his eyes are so blue. Lol." Similarly, on page 7, the United States includes another exchange where Mr. Sanchez sent Kokayi a video and they commented about it.  This exchange was in **2015**.  On subsequent pages, the government recites commentary from six or seven years ago.  These exchanges do not reflect his feelings today and Kokayi made that abundantly clear in his

debriefings and through his actions by working regularly and breaking any communication with P-1 or any extremist.

We also respectfully take issue with the government's claim that he did not travel due to "happenstance" (Page 16 of the government pleading).  That is simply not true.  Kokayi never traveled anywhere to support any group.  If he genuinely believed or wanted to travel as far back as 2014 then he would have done so.  He did not.

The prosecution also speaks of the guidelines and the what ifs of a more serious charge.  This is speculative at best.  Indeed, it is clear the government knew back in 2018 that Kokayi had expressed comments and viewed videos dating back to the 2014-15 time period.  Accordingly, when the government sought and got their exculpatory no denials, they seemingly already knew the answers to these questions.  Thus, there was an extremely triable case regarding the materiality of these answers and the real impact of Kokayi giving "no" answers to these questions.  When the prosecution comments about "if" he was convicted of an 8-year offense about statements "involving" international terrorism (page 21), the government makes a couple of assumptions.  Whether any of these statements were material is certainly an issue a jury could have gone either way on, therefore, Kokayi may have been acquitted.   Also, there is no guarantee that a jury or a judge would have found his statements both material and "involving" international

terrorism considering the nature of the statements about facts already known to the prosecution. Kokayi may not have been convicted at all or possibly convicted of only the lesser 5-year maximum charge carrying the 0-6 guideline range. Engaging in the what if, speculative game does not advance the ball. While the parties discussed the draconian potential treatment of statements such as these, the bottom line is the guideline range is 0-6 months. Hannibal saved the system a tremendous amount of resources during a pandemic in avoiding a trial that could have resulted in a not guilty verdict after all was said and done.

Putting aside any speculation, the fact is the false statement case against Mr. Kokayi remained essentially dormant for over two years.  He was not arrested, charged or otherwise interviewed again so any anticipated proclamations by the government about potential dangerousness are belied by significant delay in even addressing his exculpatory no answers. A target letter was not sent until late 2020. Hannibal quickly retained the undersigned to represent him.  Mr. Kokayi then immediately began a series of lengthy proffers with the United States and fully cooperated during every interview with the authorities.   He remained available after his last proffer, but the United States did not request any further information or interviews. As a sign of his continued cooperative approach, he even agreed to be monitored by the FBI electronically in late 2020 up until the time his plea was entered.  This 24/7 FBI supervision was completed without incident.  Following

his guilty plea, the parties then agreed to an additional period of electronic monitoring leading up to our sentencing date of July 16, 2021.

Hannibal has been on some form of 24/7 electronic supervision for over six months. This supervision stands in stark contrast to the *Khan* case cited on page 26 of the government pleading. In that case, Khan was arrested and detained. Kokayi remained in the community with no outreach by the United States for two and a half years. Khan also pled to a much more serious charge of obstruction of justice thus resulting in a higher guideline range. Khan's conduct was egregious, Kokayi's "no" statements from three years ago about comments as far back as 2014 are not.

As noted above, the plea agreement in this case is slightly unique as well. Because the statements were arguably related to "terrorism" in some manner, the Sentencing Guidelines provided for a possible dramatic increase in the sentencing guideline range if all the dominoes fell in favor of the prosecution. The parties then reached a resolution where the defense would agree to a floor of six months home incarceration/monitoring sentence. Of course, under many agreements, a variance can be sought by either party. The guideline range is 0-6 months and what the defense is requesting is completely consistent with the probation officer's recommendation, the 3553 factors and the guideline range itself.

Mr. Kokayi is an excellent candidate for supervision.  First, of course, the court has evidence of his reliability given the past six months of monitoring.  Second, as noted, these statements were provided over three years ago about comments made as far back as 2014.  Kokayi was not provided a target letter for two and half years during which time he freely worked and contributed to his community.

Most importantly, however, is the person before the court.  The attached letters speak for themselves and are noteworthy for the range of people expressing their support. The letters range from his employer to his mother to other respected members of the community.  The attachments carry a common theme—Hannibal is a kind and decent human being who made a mistake but has done everything possible to atone for his error.  Even through his debriefings with the United States, he made clear he does not think or even consider anything related to extremism anymore and does not support anyone who condones terrorism.  The reason Hannibal took part in these proffer sessions was to demonstrate his remorse and his present mentality.  Mr. Kokayi is not a threat to anyone or anything.  The government's inaction and Kokayi's actions since 2017 are far more instructive than his words from 2014.  We simply ask the court to carefully review these submissions as they speak volumes about his character and background.  Mr. Kokayi has also submitted a written statement and will speak at sentencing.

Moreover, if one really dissects this situation as the probation officer did, it is clear Kokayi's unstable background had a lot to do with these false statements. His mom's letter reflects some of this instability as she dealt with the death of a beloved second husband who was a kind and decent man. She then interacted and was married to an extremist who introduced Hannibal to some of his views. But for the cancer related death of his first, loving stepfather, Hannibal would never have encountered this subsequent stepfather and these extremist views. His mom notes in her letter her guilt and remorse about her role in this situation. She is beyond sad and depressed about her involvement with this man. Mom is now divorced from this individual and Hannibal has moved on to a loving relationship with his own wife and has continued to work his job with the full support of his employer.

Finally, we request the Court to consider his medical condition. As noted in the attached records, Mr. Kokayi suffers from a significant sinus disease. His doctor writes that he "has significant sinus disease and will continue to need medical management for these conditions" for at least the next three years. Counsel has attached this letter and a couple of examples of the types of procedures he has undergone. *See* Exhibit 12 (Redacted Medical Records). Obviously, given the current pandemic and the increasing variants in our community, any incarceration

increases the risk of serious illness given his breathing/sinus issues even if any jail could provide him adequate injections and surgeries going forward.

III.    Conclusion

In sum, a sentence of supervision with electronic monitoring is more than sufficient in this case. Kokayi is now a felon. That is punishment enough and will follow him for a lifetime. Incarceration with the loss of work would be punishment without a genuine purpose. Specific and general deterrence are more than satisfied by a felony conviction with supervision. All other factors under Section 3553 support the sentence recommended here and by the probation officer and we ask the Court to grant Kokayi justice tempered with mercy.

                        Hannibal Kokayi

                        By Counsel

_____/s_____

Frank Salvato

1203 Duke Street

Alexandria, Va. 22314

703-548-5000

Bar Nos. 30453 (Va.)

424082 (D.C.)

Frank@Salvatolaw.com

## Certificate

I hereby certify that this pleading was filed with the Court's electronic filing system on this 15th day of July, 2021 and the Court will send a NEF of this filing to the Office of the U.S. Attorney, 555 4th Street, Washington, D.C. 20001.

_____/s_____

Frank Salvato

1203 Duke Street

Alexandria, Va. 22314

703-548-5000

Bar Nos. 30453 (Va)

424082 (D.C.)

Frank@Salvatolaw.com